Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| Jaime Figueroa Ramos, Maribel Diaz Pérez y la Sociedad Legal De Gananciales compuesta por ellos <br><br> **Peticionarios** <br><br> V. <br><br><br> PR Recovery and Development JV, LLC <br><br> **Recurrida** | TA2025AP00373 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de COAMO <br><br> Civil. Núm. CO2021CV00273 <br><br> Sobre: CANCELACIÓN O RESTITUCIÓN DE PAGARÉ EXTRAVIADO |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de octubre de 2025.

El 24 de septiembre de 2025, el Sr. Jaime Figueroa Ramos (señor Figueroa), su esposa, la Sra. Maribel Díaz Pérez y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los peticionarios) comparecieron ante nos mediante *Apelación*[1] y solicitaron la revisión de una *Resolución de Relevo de Sentencia* que se dictó el 22 de agosto de 2025 y se notificó el 26 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Coamo (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la solicitud de relevo de sentencia que presentaron los peticionarios al amparo de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2.

I.

El 3 de agosto de 2021, el señor Figueroa presentó una *Demanda* sobre cancelación de pagaré hipotecario extraviado contra

---

[1] Acogemos la apelación de epígrafe como un *certiorari*, por ser el recurso adecuado para la revisión de la determinación recurrida. Sin embargo, para fines administrativos, mantenemos la codificación alfanumérica que la Secretaría de este foro le asignó al caso.

PR Recovery and Development JV, LLC (PR Recovery), Fulano y Sutano (en conjunto, la parte demandada).[2] Alegó que, el 16 de septiembre de 2002, el Banco de Desarrollo Económico (BDE) otorgó un pagaré por la suma de $101,000.00 que fue garantizado con una propiedad ubicada en el municipio de Coamo. Adujo que, el 11 de junio de 2009, el TPI dictó *Sentencia* a favor del BDE sobre cobro de dinero y ejecución de hipoteca en el caso civil núm. B2CI 2005-01165. Indicó que, el BDE vendió dicho pagaré a PR Recovery, y que este último se lo cedió mediante Contrato de Cesión de Crédito otorgado el 28 de diciembre de 2018 ante notario público. Sin embargo, sostuvo que el pagaré se extravió, y que se presumía que se perdió estando en poder de PR Recovery, razón por la cual esta figuraba como parte demandada en el pleito.

Por otro lado, señaló que, la propiedad continuaba gravada con la hipoteca constituida en la escritura Núm. 45, otorgada el 16 de septiembre de 2002, inscrita en el Registro de la Propiedad de Barranquitas. Puntualizó que, debido a la pérdida del pagaré, no había sido posible cancelar el gravamen hipotecario que aparecía inscrito. Afirmó que dicho pagaré no había sido transferido ni entregado en garantía a otra persona, y por ello incluía como partes demandadas a posibles tenedores desconocidos, identificados de manera genérica como "Fulano y Sutano". Finalmente, sostuvo que poseía una reclamación válida que justificaba la concesión del remedio solicitado.

El 30 de septiembre de 2025, el señor Figueroa presentó una *Moción de Anotación de Rebeldía y Moción Solicitando Sentencia Sumaria.[3]* En esta, expuso que, a pesar de haberse diligenciado el emplazamiento contra la parte demandada, estos no habían comparecido ni presentado su alegación responsiva en el término

---

[2] Véase, Entrada Núm. 1, SUMAC TPI.
[3] Véase, Entrada Núm. 14, SUMAC TPI.

provisto por ley. Señaló que, el emplazamiento por edicto contra Fulano y Sutano fue publicado el 23 de agosto de 2021, según constaba en la Declaración Jurada presentada junto al presente escrito como Exhibit 1. Asimismo, indicó que el diligenciamiento del emplazamiento personal sobre PR Recovery, había sido efectuado el 12 de agosto de 2021, según constaba del Exhibit 2 incluido como parte de la referida moción. En vista de lo anterior, solicitó la anotación de rebeldía contra la parte demandada al amparo de la Regla 45 de Procedimiento Civil, 32 LPRA Ap. V, R.45.

Por otro lado, destacó que presentó *Demanda* el 3 de agosto de 2021, relacionada con la pérdida de un pagaré hipotecario a favor de PR Recovery, por la suma de $101,000.00, según escritura otorgada el 16 de septiembre de 2002. Como prueba, acompañó copia del Contrato de Cesión de Crédito y copia del pagaré extraviado (Exhibits 3 y 4). Sostuvo que dicho pagaré no había sido transferido cedido, ni entregado en garantía, desconociéndose tenedor alguno, por lo que se hizo parte demandada a Fulano y Sutano como posibles tenedores desconocidos, emplazados conforme a derecho. Indicó que la obligación se saldó en su totalidad y que el pagaré se extravió estando en poder de PR Recovery o luego de su devolución al deudor, aquí demandante. Por todo lo anterior, solicitó que se dictara sentencia sumaria declarando con lugar la Demanda, y se ordenara la cancelación del pagaré y de la garantía hipotecaria inscrita en el Registro de la Propiedad.

Así las cosas, el 4 de octubre de 2021, el TPI dictó una *Sentencia en Rebeldía* que se notificó el 14 de octubre de 2021.[4] Allí, concluyó que los demandados, debidamente emplazados, no comparecieron ni presentaron oposición a la demanda. Sostuvo que el señor Figueroa había solicitado la cancelación de un pagaré

---

[4] Véase, Entrada Núm. 15, SUMAC TPI. Cabe precisar que, este dictamen se notificó por Edicto.

hipotecario por $101,000.00, emitido a favor de PR Recovery, el cual fue extraviado sin haberse cedido o negociado y cuya obligación ya había sido saldada en su totalidad. En vista de ello, y conforme a la Regla 45.2(b) de Procedimiento Civil, *supra*, declaró Ha Lugar la *Demanda*, anotó la rebeldía contra los demandados, y ordenó al Registrador de la Propiedad de Barranquitas la cancelación del pagaré y de la hipoteca constituida sobre la propiedad ubicada en el Barrio Cuyón de Coamo. Finalmente, dispuso que se presentara al Registro de la Propiedad copia certificada de la Sentencia y de la certificación de su publicación, a los fines de cancelar el gravamen objeto del pleito.

El 24 de abril de 2025, el señor Figueroa presentó una moción solicitando que se expidiera Orden y Mandamiento dirigidos al Honorable Registrador de la Propiedad, Sección de Barranquitas, Puerto Rico, ordenándole la cancelación de hipoteca que garantizaba el pagaré hipotecario extraviado objeto del presente recurso.[5] Atendida esta solicitud, el 25 de abril de 2025, el TPI emitió una *Orden para Ejecución de Sentencia* que se notificó el 28 de abril de 2025. En esta, declaró Ha Lugar la referida solicitud y, en consecuencia, ordenó la expedición del mandamiento dirigido al Registrador de la Propiedad, Sección I de Barranquitas, Puerto Rico, para que procediera, previo el pago de los aranceles correspondientes, con la cancelación del pagaré hipotecario.

Posteriormente, el 24 de junio de 2025, los peticionarios presentaron una *Moción de Sustitución de Pagare Extraviado* [...].[6] Esbozaron que, en el caso civil núm. B2CI2005-01165 se dictó sentencia el 11 de junio de 2009 declarando con lugar la Demanda presentada por el BDE contra el Sr. Félix Juan Martínez Zayas, su esposa, la Sra. Yolanda Rivera Rivera y la Sociedad Legal de

---

[5] Véase, Entrada Núm. 19, SUMAC TPI.
[6] Véase, Entrada Núm. 22, SUMAC TPI.

Gananciales compuesta por ambos, en la cual se ejecutó la hipoteca relacionada al pagaré garantizado por la Escritura Núm. 45, otorgada en San Juan, Puerto Rico, el 16 de septiembre de 2002, ante el notario Rafael Zapata Yordán, inscrita al folio 144 del tomo 275, inscripción 12ma, finca número 10239 de Coamo. Aseguraron que dicho préstamo hipotecario no tenía balance pendiente, ya que la sentencia en el referido caso fue final y firme, y se llevó a cabo la venta en pública subasta de la propiedad antes descrita.

Indicaron que, como resultado de lo anterior, se otorgó la Escritura de Venta Judicial y Cancelación de Hipoteca número 8, con fecha de 24 de agosto de 2021, ante el notario Manuel Grant Groennou, con la comparecencia del alguacil del TPI. Sin embargo, alegaron que durante el proceso de otorgar dicha escritura el pagaré se extravió, razón por la cual el notario no podía cancelarlo conforme lo requería el Art. 112 de la Ley Núm. 210-2015, según enmendada, mejor conocida como *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA sec. 6149.

De igual forma, puntualizaron que existía una *Sentencia en Rebeldía* en el presente caso, en el cual se cumplió con todo el debido proceso de ley. En virtud de lo anterior, solicitaron que se enmendara dicha Sentencia y que, en su lugar, se emitiera una Sentencia sobre Restitución de Pagaré Hipotecario Extraviado, a tenor con lo dispuesto en el Artículo 112 de la Ley Núm. 210-2015, *supra*. Adujeron que esta enmienda no causaría perjuicio a terceros ni afectaría derechos sustanciales, conforme a la Regla 50 de Procedimiento Civil, 32 LPRA Ap. V, R, 50. Por ello, solicitaron que se ordenara al alguacil del TPI a comparecer en la correspondiente Escritura de Restitución de Pagaré, a los fines de que pudiese ser cancelado mediante escritura pública.

Evaluada esta moción, ese mismo día, a saber, el 24 de junio de 2025, el TPI emitió una *Resolución Interlocutoria* que se notificó

el 26 de junio de 2025.[7] En esta, declaró No Ha Lugar la solicitud presentada, señalando que en el presente caso ya se emitió *Sentencia en Rebeldía* conforme lo solicitado por el señor Figueroa, en relación con la cancelación del pagaré extraviado. Indicó que la sustitución del pagaré constituía un remedio distinto al solicitado en el caso de epígrafe y que únicamente procedía cuando el instrumento negociable se extraviaba sin que se hubiese extinguido la obligación, lo que no ocurrió en este caso.

Además, el TPI citó el caso *Popular Mortgage v. Registrador*, 181 DPR 625, 638 (2011), en el cual el Tribunal Supremo reconoció que, en los casos en que un pagaré se extraviaba, lo que procedía era una acción judicial de cancelación de pagaré extraviado, según lo disponía el Artículo 122 de la Ley Núm. 210-2015, 30 LPRA sec. 6172. Asimismo, señaló que, de ordinario, correspondía al notario verificar el consentimiento del tenedor del pagaré para cancelar la hipoteca; sin embargo, cuando el pagaré se extraviaba, tal verificación era imposible, y la ley exigía instar una acción judicial contra el último poseedor conocido y cualquier poseedor desconocido para que el Tribunal comprobara que la deuda fue satisfecha y que el pagaré se extravió, según lo establecía el Artículo 131.1 del Reglamento Hipotecario.

En desacuerdo con este dictamen, el 9 de julio de 2025, los peticionarios presentaron una solicitud de reconsideración.[8] Argumentaron que precisamente porque la obligación no se había extinguido al momento se extraviarse el pagaré era que se solicitaba el remedio solicitado en la moción del 24 de junio de 2025. Sostuvieron que no fue hasta la ejecución de la propiedad y su venta en pública subasta que la deuda quedó satisfecha, según constaba en la Escritura de Venta Judicial y Cancelación de Hipoteca Núm. 8

---

[7] Véase, Entrada Núm. 23, SUMAC TPI.
[8] Véase, Entrada Núm. 24, SUMAC TPI.

del 24 de agosto de 2021, otorgada ante el notario Manuel Grant Groennou, con la comparecencia del alguacil del TPI. Reiteraron que en dicha escritura no se podía cancelar el pagaré conforme lo requería el Art. 112 de la Ley Núm. 210-2015, debido a que este se extravió con posterioridad a la venta en pública subasta. Por este motivo, solicitaron que, de no proceder la sustitución, se enmendara la resolución a los efectos de disponer que el pagaré se cancelaba por haberse extraviado luego de la venta judicial en pública subasta, quedando la deuda satisfecha mediante la ejecución de hipoteca.

El 9 de julio de 2025, el TPI dictó una *Resolución de Reconsideración* que se notificó el 11 de julio de 2025 declarando No Ha Lugar la solicitud de reconsideración.[9] Explicó que, lo peticionarios no pidieron corregir un error de forma conforme a la Regla 49.1 de Procedimiento Civil, 32 LPRA Ap. V, R.49.1, sino modificar un asunto sustantivo de la sentencia, para lo cual el Tribunal no tenía jurisdicción. Indicó que para atender asuntos sustantivos la parte peticionaria contaba con los remedios de reconsideración al amparo de la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47, con un *certiorari* bajo la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 o el recurso contra la sentencia que concede la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, todos dentro de términos específicos que no fueron presentados oportunamente. Finalmente, resaltó que la Sentencia en Rebeldía fue notificada el 14 de octubre de 2021, hace más de tres años y ocho meses.

Así las cosas, el 22 de agosto de 2025, los peticionarios presentaron un *Relevo de Sentencia* [...].[10] Expresaron que, mediante la Escritura Núm. 8 sobre Venta Judicial y Cancelación de Hipoteca, del 24 de agosto de 2021, ante el notario Manuel Grant

---

[9] Véase, Entrada Núm. 25, SUMAC TPI.
[10] Véase, Entrada Núm. 26, SUMAC TPI.

Groennou, buscaban registrar su propiedad. Indicaron que la propiedad a registrar tenía el gravamen de un pagaré de $101,000.00, el cual debía cancelarse una vez se registrara, pues no estaba prescrito. Sostuvieron que la Sentencia de Ejecución de Hipoteca del caso civil núm. B2CI2005-01165, describía el pagaré y establecía que podría cancelarse en su momento.

Aseguraron que el pagaré estaba extraviado, pero aclararon que no estaba prescrito, y que se extravió posterior a la venta en pública subasta y mucho antes de la Escritura sobre venta judicial. Manifestaron que tuvieron conocimiento del error por notificación del Registrador de la Propiedad, Sección de Barranquitas, el 3 de junio de 2024, cuando ya había transcurrido más de seis (6) meses, plazo que establecía la Regla 49.2 de Procedimiento Civil, *supra*, para solicitar el relevo de sentencia. Explicaron que, por esta razón, el notario no pudo cancelarlo en la Escritura de Compraventa, y que pasados veinte (20) meses desde la Sentencia de Cancelación de Pagaré, se percataron del error.

Alegaron que se cometió un error al entender que la cancelación procedía por prescripción, cuando en realidad los términos de prescripción no se habían dado, constituyendo una negligencia excusable. Argumentaron que, de concederse el relevo de sentencia y dejar sin efecto la misma, no se afectaría a terceros, ya que les correspondía a ellos efectuar la cancelación. Sostuvieron que negar el relevo les impediría registrar la propiedad a su nombre, a pesar de haber seguido todos los procesos y haber incurrido en grandes gastos, y que ello generaría una injusticia al mantener la hipoteca vigente a favor del acreedor.

En vista de lo anterior, solicitaron que se dejara sin efecto la sentencia dictada en el caso número CO2021CV00273 sobre Cancelación de Pagaré Extraviado, destacando que nunca hubo

intención de cometer error y que ningún tercero resultará perjudicado.

Atendida la solicitud de relevo de sentencia, el 22 de agosto de 2025, el TPI dictó una *Resolución Relevo de Sentencia* que se notificó el 26 de agosto de 2025 declarándola No Ha Lugar por falta de jurisdicción y citó el caso *Piazza Vélez v. Isla del Río, Inc.*, 158 DPR440 (2003).[11] Aún inconforme, el 24 de septiembre de 2025, los peticionarios presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> **Erro el Tribunal de Primera Instancia, al declararse sin jurisdicción cuando la Regla 49.2 de Procedimiento Civil le provee la discreción, negligencia excusable para conceder el Relevo.**
>
> **Erro el Tribunal de Primera Instancia, al no otorgar el Relevo de Sentencia cuando la solicitud se le hizo en caso independiente al de la Sentencia emitida.**

Atendido el recurso, el 26 de septiembre de 2025, emitimos una *Resolución* concediéndole a la recurrida hasta el 6 de octubre de 2025 para presentar su postura en cuanto al recurso. Vencido el término para ello sin que la recurrida presentara su postura en cuanto al recurso, damos por perfeccionado el recurso y procedemos a resolver el asunto ante nos. *Veamos.*

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo,

---

[11] Véase, Entrada Núm. 27, SUMAC TPI.

discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

Es importante destacar que, al interpretar la Regla 52.1 de Procedimiento Civil, *supra,* el Tribunal Supremo resolvió que "las resoluciones atinentes a asuntos post sentencia —como la que tenemos ante nuestra consideración— no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*". *IG Builders et. al. v. BBVAPR*, 185 DPR 307, 339 (2012).

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

La Regla 49.2 de Procedimiento Civil, *supra,* establece el mecanismo procesal disponible para solicitar al Tribunal de Instancia el relevo de los efectos de una sentencia. *García Colón et al. v. Sucn. González,* 178 DPR 527, 539 (2010). Específicamente, la aludida Regla dispone lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) error, inadvertencia, sorpresa o negligencia excusable;
>
> (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;
>
> (d) nulidad de la sentencia;
>
> (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. (Énfasis suplido).

[...]

Para que proceda el relevo de sentencia bajo la referida regla, "es necesario que el peticionario aduzca, al menos, una de las razones enumeradas en esa regla para tal relevo". Íd., pág. 540. Además, **una moción basada en la aludida Regla debe estar bien fundamentada**, pues sabido es que los dictámenes emitidos por nuestros tribunales gozan de una presunción de validez y corrección. (Énfasis nuestro) *Cortés Piñeiro v. Sucesión A. Cortés*, 83 DPR 685, 690 (1961). Cabe precisar que, como regla general, dicha acción tiene que ejercitarse dentro los seis (6) meses siguientes al archivo y notificación de la sentencia. *HRS Erase, Inc. v. Centro Médico del Turabo, Inc.*, 205 DPR 689, 698 (2020). Sin embargo, a modo de excepción, tal norma cede cuando se trata de una sentencia que adolece de nulidad. Íd. Entiéndase, "si una sentencia es nula, la parte promovedora de una moción de relevo de sentencia no está limitada por el término de seis meses expuesto." Íd., pág. 699.

A tenor con lo antes expuesto, cabe precisar que, independientemente de la existencia de uno de los fundamentos expuestos en la regla, relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Rivera v. Algarín*, 159 DPR 482, 490 (2003).

III.

En primer lugar, debemos señalar que en el presente recurso se recurre de una resolución atinente a un asunto post sentencia, la cual no se encuentra comprendida entre aquellas determinaciones de naturaleza interlocutoria evaluadas al amparo de la Regla 52.1 de Procedimiento Civil, *supra.* En vista de ello, nos corresponde justipreciar si debemos ejercer nuestra facultad

discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.*

Luego de examinar el expediente y los argumentos esgrimidos por el peticionario a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o post sentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones